**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEHAVIORAL MOMENTUM LLC *doing business as* THE PUZZLE PLACE,<br><br>Plaintiff,<br><br>v.<br><br>WE CARE AUTISM SERVICES, *et al.*,<br><br>Defendants. | Civil Action No. 24-4734 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Behavioral Momentum LLC d/b/a Puzzle Place's ("Plaintiff") motion for a temporary restraining order and/or a preliminary injunction. (ECF No. 3.) Defendant Anna Mokrzecki ("Defendant")[1] opposed (ECF No. 25), and Plaintiff replied (ECF No. 29). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Court reserves on Plaintiff's motion.

---

[1] Plaintiff filed this action against three defendants: Defendant, Rachael Ambrose ("Ambrose"), and We Care Autism Services, LLC ("We Care"). (Compl. 1, ¶¶ 5-7, ECF No. 1.) Ambrose was Defendant's coworker also previously employed by Plaintiff, and We Care is Plaintiff's competitor with whom Defendant had a working relationship. (*Id.* ¶¶ 37.) After the Court ordered Plaintiff to file a renewed emergent relief application (ECF No. 11), Ambrose and We Care were dismissed from this action (ECF Nos. 22, 27). As such, Defendant is the only remaining Defendant in this matter, and accordingly, the Court only focuses on Defendant's alleged role in the instant matter.

I.    **BACKGROUND**

    A.    **Factual Background**[2]

Plaintiff is a New Jersey-based limited liability company that "provides applied behavioral analysis ("ABA") therapy and other services to children diagnosed with autism." (Compl. ¶ 10.) Plaintiff employs Board-Certified Behavior Analysts ("BCBA") to create "highly individualized and specialized treatment plan[s] for" children in Plaintiff's care. (*Id.*) BCBA's also supervise Registered Behavior Technicians ("RBT") and Behavior Technicians ("BT"). (*Id.* ¶ 13.) Defendant worked as a BCBA for Plaintiff. (*Id.* ¶¶ 17-18.)

While employed by Plaintiff, Defendant "had unfettered access to nearly all" of Plaintiff's "confidential information and trade secrets."[3] (*Id.* ¶ 19.) When she began with Plaintiff, Defendant signed an employment agreement (the "Agreement"). (*Id.* ¶ 17.) Under the Agreement, Defendant was paid an hourly rate. (*Id.* ¶ 22.) In exchange for her salary, Defendant agreed to: (1) not compete with Plaintiff or its affiliates; (2) not solicit Plaintiff's employees and consultants; (3) not solicit Plaintiff's clients during her employment and/or for 24-months post-employment; (4) not compete for sixty days after her employment period ended; and (5) not disparage Plaintiff for 24-months post-employment. (*Id.* ¶ 24.) Also under the Agreement, Plaintiff agreed she would "not, without the prior written consent of [Plaintiff], while employed by [Plaintiff] or any time thereafter, use or

---

[2] For purposes of presenting the factual background, the Court accepts Plaintiff's allegations as true.

[3] Plaintiff avers that its confidential information and trade secrets include: (1) client lists; (2) BCBA lists; (3) textbooks and manuals; (4) insurance information; and (5) other unidentified "things." (Compl. ¶ 20.)

2

disclose or enable anyone else to use or disclose" Plaintiff's confidential information. (*Id.* ¶ 26.) When her employment terminated, Defendant agreed to:

> [P]romptly deliver to [Plaintiff] all documents, equipment and other materials in [her] possession, custody[,] or control . . . that relate in any manner to the past, present[,] or anticipated business and affairs of [Plaintiff], including, without limitation, any such documents and materials that contain or constitute [c]onfidential [i]nformation, and equipment such as a personal computer or cellphone.

(*Id.*)

On February 29, 2024, Plaintiff's Clinical Director, Rivka Teichman ("Teichman"), received feedback from a client's ("P.C.D.") parents that they were unsatisfied with their child's level of care. (*Id.* ¶ 33.) Plaintiff discovered after the discussion with P.C.D.'s parents that Defendant convinced the parents to pull P.C.D. out of Plaintiff's care, and to instead seek care with We Care. (*Id.* ¶ 34.) The next day, another of Plaintiff's client's parents transferred the client to We Care. (*Id.* ¶ 35.) That client was previously a patient of Defendant. (*Id.*)

On March 4, 2024, Plaintiff received an e-mail message from Defendant. (*Id.* ¶ 36.) The e-mail message was directed to a Speech Language Pathologist ("SLP") who previously worked with P.C.D. (*Id.*) In the message, Defendant asked the SLP "what she should still work on with P.C.D.," implying that even after P.C.D. no longer was in Plaintiff's care, Defendant, Plaintiff's employee, continued to work with P.C.D. (*Id.*)

On March 13, 2024, Plaintiff uncovered that Defendant was "emailing reports to her [personal] email from other [of Plaintiff's clients]" as well as other trade material that belonged to Plaintiff. (*Id.* ¶ 38.) In addition, Defendant "hacked" into Plaintiff's secure medical system "by using the username and password that she was authorized to use"[4] to download certain client

---

[4] Plaintiff alleges that Defendjant "hacked" the system because she exceeded her authorized use when acquiring protected health information from the secure domain. (Compl. ¶ 41.)

information. (*Id.* ¶ 41.) More specifically, Defendant "downloaded manuals, client lists, textbooks[,] and other work products that are confidential in nature and belong to [Plaintiff] in order to use it at her employment at We Care." (*Id.* ¶ 45.) In doing so, Defendant "exceeded the authority that she had, went into locations in the computer system that she had no right to go, and [which she] knew that she had no right to access." (*Id.*) Defendant is currently using these materials to "solicit and induce current clients to leave the care of [Plaintiff] and move to We Care." (*Id.* ¶ 46.)

### B. Procedural History

On April 10, 2024, Plaintiff contemporaneously filed its Complaint and the instant motion for a temporary restraining order and/or a preliminary injunction. (ECF Nos. 1, 3.) In its Complaint, Plaintiff brings six counts against Defendant: (1) violation of the Computer Fraud and Abuse Act (the "CFAA") ("Count One"); (2) participating in a Racketeer Influenced and Corrupt Organizations Act ("RICO") enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(C) ("Count Two"); (3) civil conspiracy to violate RICO under 18 U.S.C. § 1962(d) ("Count Three"); misappropriation of trade secrets under the New Jersey Trade Secrets Act (the "NJTSA") and the Defend Trade Secrets Act (the "DTSA") ("Count Four"); breach of contract under state law ("Count Five"); and (6) tortious interference with contractual and/or advantageous business relations under state law ("Count Six"). (Compl. ¶¶ 50-106.)

On April 12, 2024, the Court held a telephone conference and ordered Plaintiff to refile its emergent relief application. (ECF Nos. 11, 20.) Plaintiff did so, and filed a renewed memorandum in support of its motion. (ECF No. 15.) On June 20, 2024, Defendant opposed the renewed memorandum after the Court reset certain briefing deadlines. (ECF No. 25.) On June 27, 2024, Defendant replied. (ECF No. 29.) Several weeks later, on July 19, 2024, Plaintiff requested, and

the Clerk of Court granted, default against Defendant. (ECF No. 31.) As of the date of this Opinion, Defendant is still in default.

## II.     LEGAL STANDARD

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances."[5] *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). This remedy should be granted only if plaintiffs establish that: (1) "they are likely to succeed on the merits of their claims"; (2) "they are likely to suffer irreparable harm without relief"; (3) "the balance of harms favors them"; and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mars Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted). With respect to the first factor, "on an application for injunctive relief, the movant need only make a showing of reasonable probability, not the certainty, of success on the merits." *Atl. City Coin & Slot Serv. Co., Inc. v. IGT*, 14 F. Supp. 2d 644, 657 (D.N.J. 1998) (internal quotation marks and citations omitted). In the end, however, "[t]he burden is on the moving party 'to convince the district court that all four factors favor preliminary relief.'" *Peter v. Att'y Gen. of N.J.*, No. 23-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023) (quoting *AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).

---

[5] Temporary restraining orders and preliminary injunctions require the same elements be met. *Koons v. Reynolds*, 649 F. Supp. 3d 14, 22 (D.N.J. 2023).

## III.    DISCUSSION

For the reasons outlined below, the Court reserves on Plaintiff's motion pending an evidentiary hearing.[6] The Third Circuit has "repeatedly insisted" that "the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000)). In considering irreparable harm, as is commensurate with Article III standing, "irreparable harm . . . must be actual and imminent, not merely speculative." *Macchione v. Coordinator Adm'r in Wash. D.C.*, 591 F. App'x 48, 49 (3d Cir. 2014); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (setting forth the Article III standing requirements and articulating that a plaintiff must show "that he or she suffered an injury in fact that is . . . actual or imminent." (citing *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020))). This non-speculative actual or imminent harm must be supported by "affirmative evidence indicating that [the plaintiff] will be irreparably harmed should . . . relief be denied." *ADP, Inc. v. Levin*, No. 21-2187, 2022 WL 1184202, at *2 (3d Cir. Apr. 21, 2022) (quoting *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987)).

Here, Plaintiff fails to provide affirmative evidence sufficient to establish an actual or imminent harm. To be clear, Plaintiff's allegations that are conceivably capable of warranting

---

[6] The Court focuses only on its irreparable harm analysis because all four preliminary injunction factors must be met by a plaintiff in order to succeed in moving for a temporary restraining order and Plaintiff has not yet persuaded the Court that this matter is one where the risk of irreparable harm exists.

preliminary injunctive relief include:[7] (1) Defendant convinced parents "to pull" clients from Plaintiff's care, and continues to do so (*See* Compl. ¶¶ 34, 46); (2) Defendant worked with We Care and solicited Plaintiff's clients in violation of her non-solicitation agreement, and continues to do so (*see id.* ¶¶ 24, 46); (3) Defendant emailed trade secrets to her personal e-mail account, and uses those materials to compete with Plaintiff (*see id.* ¶¶ 38, 41, 45, 46); and (4) Defendant "hacked" into Plaintiff's medical system and downloaded client information in order to download trade secrets to use "at her employment at We Care." (*see id.* ¶¶ 41, 45, 46). Crucially, however, Plaintiff provides only one piece of evidence to support ongoing harm like that which it alleges, namely, Teichman's declaration that Defendant "is actively using" confidential "patient information" to damage Plaintiff, i.e., using the information to "solicit [Plaintiff's] clients" and damage Plaintiff's reputation. (Teichman Decl. ¶ 78, ECF No. 14.) The rest of Plaintiff's evidence only establishes, at best, that Defendant sent certain educational materials to her personal email address. (*See generally* Ex. F to Pl.'s Moving Br., ECF No. 14-6 (providing an example of Defendant sending certain materials to her personal email address but not clearly suggesting ongoing use of those materials).)

Without more detail from Teichman about how Defendant "is actively using" confidential information to harm Plaintiff, or other evidence to suggest the same, Plaintiff asks this Court to issue emergent injunctive relief upon speculation and protestations unsupported by corroborating evidence. Facts, however, matter. *Autobar Sys. of N.J. v. Berg Co., LLC*, No. 23-2541, 2024 WL

---

[7] Monetary harm such as that which might be collected from Plaintiff's success on its breach of contract or tortious interference claims is generally not sufficient to constitute irreparable harm for purposes of a preliminary injunction or a temporary restraining order. *Bennington Foods LLC v. St. Croix Renaissance, Grp.*, 528 F.3d 176, 178-79 (3d Cir. 2008) (collecting cases). As such, only Plaintiff's RICO, computer fraud, and misappropriation of trade secret claims can cognizably serve as a basis for preliminary relief if ongoing.

3859807, at *1 (3d Cir. Aug. 17, 2024). As such, the Court finds that a hearing is necessary to explore the veracity of Plaintiff's contentions regarding Defendant's ongoing harmful conduct. Plaintiff is instructed to accumulate all evidence it has of ongoing harm and to be prepared to present it at the hearing and in pre-hearing briefing. Defendant will also be asked to provide evidence rebutting Plaintiff's declaration that Defendant is engaged in active solicitation of Plaintiff's clients. Should Plaintiff be unable to point to more precise evidence to support Teichman's declaration that harm is ongoing, Plaintiff's motion will be denied in its entirety.

## IV.   CONCLUSION

For the above reasons, the Court reserves judgment on Plaintiff's motion pending an evidentiary hearing. An appropriate order will follow this Memorandum Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**